**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

**MARK ISAAC SNARR,**
     *Movant,*

    **v.**           **No. 1:09-cr-00015-MAC-KFG**

**UNITED STATES OF AMERICA,**
     *Respondent.*

---

**Motion for Appointment of Counsel**
**to Pursue All Available Post-Conviction Remedies**
**and Memorandum of Law in Support**

---

## I.  MOTION

MARK ISAAC SNARR, by and through undersigned counsel, an indigent federal prisoner under sentence of death imposed by this Court, respectfully moves the Court, pursuant to 18 U.S.C. § 3599(a)(2), to appoint counsel to represent him in pursuing any and all available post-conviction remedies, including the investigation, preparation, and prosecution of a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. Specifically, Mr. Snarr requests that the Court appoint Mr. Robert Lee in conjunction with co-counsel, the Office of the Federal Public Defender for the District of Utah in Salt Lake City.[1]  This legal team possesses the requisite experience for appointment in a capital § 2255 case and, for reasons explained *infra*, would also ensure that Mr. Snarr's prospective claims for relief are properly investigated and pled in a cost-effective manner. This request is time-sensitive because, as is explained below, Mr. Snarr's

---

[1] As required by Administrative Office of the Courts ("AO") protocol, notification of a potential out-of-district defender appointment has been provided to Fifth Circuit Chief Judge Stewart who posed no objection to the Federal Public Defender for the District of Utah's appearing in this case.

statute of limitations for filing a motion for relief under 28 U.S.C. § 2255 is likely to begin running in the very near future, and he must raise and plead all available post-conviction claims within that year. Accordingly, Mr. Snarr asks that he receive appointment of appropriately qualified counsel in an expeditious manner, to ensure that he can exercise his right to comprehensive, meaningful post-conviction review of his conviction and death sentence. [2]

In support of this request, Mr. Snarr states the following.

## II.   MEMORANDUM OF LAW IN SUPPORT

### A. Mr. Snarr Seeks Timely Appointment of Counsel to Pursue Post-Conviction Relief Pursuant to 28 U.S.C. § 2255.

Mr. Snarr has been convicted and sentenced to death by a federal court. Pursuant to 28 U.S.C. § 2255, he intends to pursue all avenues for post-conviction relief. Mr. Snarr, however, is financially unable to obtain counsel or other services and resources necessary to pursue § 2255 review.[3] Under 18 U.S.C. § 3599, these circumstances entitle Mr. Snarr to appointment of one or more attorneys and the furnishing of other services as appropriate.

---

[2] Undersigned counsel were contacted by attorneys with the Federal Capital Habeas Project, a program established by the Judicial Conference of the United States Committee on Defender Services in 2006, to assist with recruitment of counsel for federally death-sentenced prisoners whose § 2255 litigation is commencing.  As a program founded and funded by the judiciary, the Project is acutely aware of the need for fiscal efficiency and cost containment.

In this case, as is explained further herein, the Project attorneys approached undersigned counsel to represent Mark Snarr because of their combined experience representing clients who are convicted of prison killings in capital habeas proceedings and for their proximity to the sites of investigation, both features designed to insure cost-effective representation.  Undersigned counsel have carefully considered the prospect and are prepared to accept appointment should the Court agree that they are well situated to provide quality and cost-effective representation to Mr. Snarr in his capital § 2255 litigation.

[3] This Court previously found Mr. Snarr indigent for purposes of receiving legal representation at trial and on appeal, and nothing about his financial circumstances has changed since that previous finding of indigency.

This Court entered an amended judgment in Mr. Snarr's case on May 27, 2010. *United States v. Snarr*, No. 1:09-cr-00015-MAC-KFG-1 (E.D. Texas) (Doc. No. 359). Mr. Snarr's conviction and death sentence have since been affirmed on direct appeal. *United States v. Snarr,* 704 F.3d 368 (5th Cir. 2013). On June 13, 2013, Mr. Snarr filed a timely petition for a writ of certiorari with the United States Supreme Court.[4] In the event that the Supreme Court denies the petition, as is generally the case,[5] Mr. Snarr will have just one year from the date of its denial of certiorari to file a motion for relief under 18 U.S.C. § 2255. *See id*. (providing that "a 1-year period of limitation," running from the date the defendant's conviction became final on direct appeal, "shall apply to a motion under this section"). At present, however, Mr. Snarr has no counsel appointed for the purpose of investigating, preparing, and filing such a motion. Accordingly, the undersigned file this appointment motion now in order to provide Mr. Snarr with ample time to properly prepare his § 2255 motion prior to the statutory filing deadline.[6]

Because Mr. Snarr's statute of limitations for seeking post-conviction relief under § 2255 is likely to begin running soon, counsel should be appointed at the earliest opportunity to protect Mr. Snarr's right to "preapplication legal assistance" in investigating and preparing his post-conviction claims. *See McFarland v. Scott*, 512 U.S. 849, 855 (1994) (establishing a right to

---

[4] The government's Brief In Opposition is due on January 6, 2014.

[5] The United States Supreme Court grants fewer than 100 petitions for certiorari each year out of roughly 10,000 applications. *See* www.supremecourt.gov/about/justicecaseload.aspx (last visited on October 4, 2013).

[6] The undersigned are advised that district courts are providing for appointment of counsel in capital § 2255 proceedings prior to the denial of petitions for a writ of certiorari. *See, e.g., Ebron v. United States*, No. 1:08-cr-00036-MAC-ESH (E.D. Texas); *Johnson v. United States,* No. 01-CR-3046-MWB (N.D. Iowa)*; Basham v. United States,* No. 02-CR-00992-JFA (D. S.C.); *Fell v. United States*, 2:01-cr-00012-wks-1 (D. Vt.).

preapplication legal assistance for capital defendants in federal habeas corpus proceedings). As with the previously existing right to counsel under 18 U.S.C. § 848(q), the right to counsel under § 3599 attaches *prior* to the filing of a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence. Any other interpretation of the statute would leave condemned prisoners without meaningful access to the courts. As the Supreme Court explained with respect to § 3599's predecessor provision:

> Congress' provision of a right to counsel . . . reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." § 848(q)(7).  An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial because "the complexity of our jurisprudence in this area . . . makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law."

*McFarland*, 512 U.S. at 855-56 (quoting *Murray v. Giarratano*, 492 U.S. 1, 14 (1989) (Kennedy, J., joined by O'Connor, J., concurring in the judgment)).

Federal law provides for the appointment of "one or more attorneys" for an indigent inmate seeking relief from a federal capital conviction or death sentence in proceedings under 28 U.S.C. § 2255 or in any other post-conviction proceedings, including clemency. 18 U.S.C. § 3599(a)(2) ("In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f)."). As far as counsel is aware, the court has appointed at least two attorneys to represent the movant in every

federal capital case that was tried in the Eastern District of Texas and reached § 2255 review. *See*, *e.g.*, *Ebron v. United States*, No. 1:08-cr-00036-MAC-ESH (E.D. Texas); *Agofsky v. United States,* No. 1:07-CV-00511-TH (E.D. Texas); *Jackson v. United States*, No. 1:09-CV-01039-RC (E.D. Texas).

### B. Proposed Counsel Is Qualified for Appointment to Mr. Snarr's Case.

Proposed counsel Robert Lee has specialized experience in capital post-conviction representation. His practice has focused exclusively on capital litigation for the past twenty years, as an attorney in Mississippi, and as a mitigation investigator, staff attorney, Legal Director and now Executive Director of an organization that focuses on the representation of capitally-sentenced prisoners in the Commonwealth of Virginia.[7] He is a member in good standing of the Virginia and Mississippi bars. He is admitted to practice in the Supreme Court of the United States, the United States Court of Appeals for the Fourth Circuit, and the United States District Courts for the Eastern and Western Districts of Virginia. He has been admitted as a member of this Court.

Mr. Lee's experience renders him well-suited for appointment. He has served as counsel in numerous post-conviction cases in the Supreme Court of the United States.[8]  He has been appointed to or served as advising counsel in more than two dozen capital cases in the United States Court of Appeals for the Fourth Circuit.[9]  In most of those cases, Mr. Lee also served as

---

[7] The Virginia Capital Representation Resource Center is a not-for-profit law firm that provides direct representation in death penalty cases at the trial, appellate, and post-conviction stages in the Commonwealth of Virginia and assists attorneys representing death-sentenced inmates or those facing possible death sentences.

[8] These cases include *Bell v. Kelly*, 07-1223, *Mickens v. Taylor*, 00-9285, and *Atkins v. Virginia*, 00-8452.

[9] *See e.g.*, *Juniper v. Davis*, (No. 13-7); *Gray v. Pearson*, (No. 12-5); *Bell v. Kelly*, (No. 06-22); *Hedrick v. True*, (No. 04-32); *Vinson v. True*, (No. 04-29); *Lovitt v. True*, (No. 04-28); *Bailey v. True*, (No. 03-18); *Beck v. Angelone*, (No. 00-13); *Mickens v. Taylor*, (No. 00-4); *Goins v. Angelone*, (No. 99-13); *Graham v.*

counsel in post-conviction proceedings in the federal district and state post-conviction court. He brings extensive, specialized experience in post-conviction representation in cases like Mr. Snarr's case.

In addition, Mr. Lee also has extensive experience litigating cases, such as Mr. Snarr's, in which the capital conviction arose from a prison homicide. Among these was *Gleason v. Warden*, (Va.) (Related Cases 09F00279; 11F00055) (Circuit Court, Wise County Jun. 25, 2012), where he was lead post-conviction counsel for a Virginia prisoner sentenced to death for committing two murders while incarcerated, and *Lenz v. Warden*, 579 S.E.2d 194 (Va. 2003), where he supervised the post-conviction litigation for a capital prison homicide. Because prison homicide cases involve unique issues with respect to fact-development, records collection and other aspects of post-conviction investigation and claim development, Mr. Lee's experience will lend itself not only to ensuring that Mr. Snarr receives competent counsel to represent him, but also to more efficient and cost-effective representation. Mr. Lee's familiarity with investigation and litigation of capital cases arising from prison homicides would obviate the need to spend many hours learning about the kind of discovery, investigation, and legal issues common to these cases in post-conviction proceedings.

Pursuant to 18 U.S.C. § 3599(a)(2), in another effort at reducing overall costs, this motion also seeks the appointment as co-counsel of Kathryn Nester, Federal Public Defender for the District of Utah in Salt Lake City, UT, who would participate at no cost to the Court.[10] Ms.

---

*Angelone*, (No. 99-4); *Joseph v. Angelone*, (No. 98-35); *Mueller v. Angelone*, (No. 98-31); *Williams v. Angelone*, (No. 98-28); *Swann v. Taylor*, (No. 98-20); *Yeatts v. Angelone*, (No. 98-19); *Quesinberry v. Taylor*, (No. 98-3); *Dubois v. Greene*, (No. 97-21); and *King v. Greene*, (No. 97-28).
[10] Representation by defender organizations outside the jurisdiction is common in capital §2255 cases. Because opposing counsel nationwide are all associated with and generally assisted by the Department of Justice, the practice across jurisdictions tends to be similar, and there are no state law concerns at issue.

Nester is a graduate of the University of Texas School of Law and has been admitted to practice in the Supreme Court of the United States, the United States Court of Appeals for the Fifth and Tenth Circuits, the United States District Courts for the Northern and Southern Districts of Mississippi and the District of Utah, the State of Mississippi (currently inactive) and the State of Utah and was admitted *pro hac vice* in two trials in the Eastern District of Texas, Marshall Division.

Appointment of Ms. Nester's office would build significant efficiencies into Mr. Snarr's representation. Mr. Snarr was born in Salt Lake City and spent a significant amount of his life in Utah, including time he spent serving sentences in Utah correctional facilities. As a considerable part of the necessary § 2255 investigation into Mr. Snarr's background and life history – which includes interviewing pertinent witnesses and collecting institutional records – will take place in Utah, her office can serve as a geographical base of operations for this part of the investigation, as well as provide personnel and support. Ms. Nester also comes with federal capital trial experience in the Fifth Circuit: she was appointed to serve as CJA lead counsel to represent Kathleen Nelson from 2003 through 2005 in a federal death penalty case involving the murder of a federal witness in the Southern District of Mississippi, Jackson Division. (*United States v. Levon Edmond, et al, 3:03-cr-30HTW*).[11]   She does not, however, have experience in post-conviction litigation.   Ms. Nester's knowledge of federal law together with Mr. Lee's

---

Moreover, as in this case, the local defender office is often unable to provide conflict-free representation in these post-conviction cases. (The Federal Public Defender for the Eastern District of Texas represented Mr. Snarr at trial.)

[11] Ms. Nester and her co-counsel appeared before the Attorney General's Capital Case Review Committee in Washington D.C. and presented their case in mitigation, asking the Attorney General to decline to seek the death penalty. The Committee recommended no death penalty and the Attorney General agreed with its recommendation.

considerable capital habeas experience will insure that Mr. Snarr is represented by qualified counsel pursuant to § 3599.

Appointment of the Federal Public Defender would also provide opportunities to reduce costs across the board,[12] as the office possesses staff such as paralegals and investigators who would, under the supervision of experienced co-counsel, provide investigative and administrative work at no cost to the Court. Mr. Snarr grew up in Salt Lake City; thus, the Federal Public Defender's central location and its staff's familiarity with the area is particularly suited to efficiently performing such tasks as locating witnesses and obtaining pertinent institutional records. Such tasks would otherwise have to be performed by out-of-state counsel (and/or their staff), who would necessarily incur additional travel costs. Moreover, the Federal Public Defender has its own budget to pay for expert services, thus reducing the administrative burden on this Court. In short, appointment of the Federal Public Defender will further insure that Mr. Snarr receives quality representation in his §2255 proceedings while efficiently managing monetary and judicial resources in the process.

As required by Administrative Office of the Courts ("AO") protocol, notification of a potential out-of-district defender appointment has been provided to Fifth Circuit Chief Judge Stewart, who sat on the Fifth Circuit panel that decided Mr. Snarr's case on direct appeal, and Chief Judge Stewart posed no objection. The Federal Public Defender for the District of Utah thus has been granted permission to seek appointment in Mr. Snarr's case.

---

[12] Various studies have shown that defender offices are able to provide representation at reduced cost due to their ability to offer administrative support and otherwise manage the cases in-house. (*See* Nachmanoff, Michael S., Statement to the Senate Subcommittee On Bankruptcy and the Courts *Sequestering Justice: How the Budget Crisis is Undermining Our Courts*, Hearing, July 23, 2013. Available at http://www.constitutionproject.org/wp-content/uploads/2013/08/1122115_Nachmanoff-Testimony-7-23-13.pdf; last visited 10/9/13.)

**Conclusion and Prayer for Relief**

WHEREFORE, pursuant to 18 U.S.C. § 3599, Mr. Snarr, by and through undersigned counsel, respectfully requests that the Court appoint Robert Lee and the Office of the Federal Public Defender for the District of Utah in Salt Lake City, UT, to represent him in seeking all available post-conviction remedies.

Respectfully submitted,

_____/s/_____

**CERTIFICATE OF SERVICE**

This is to certify that, on this the 18th day of December, 2013, counsel of record have been served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5 (a)(3). Any other counsel of record will be served by facsimile transmission and first class mail, on this the same date.

_____/s/_____