UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARK ISSAC SNARR, | ) | |
|     Petitioner | ) | Case No. 1:13-CV-724 |
| | ) | |
| v. | ) | Criminal No. 1:09-CR-00015 |
| | ) | |
| UNITED STATES OF AMERICA | ) | Judge Marcia A. Crone |
|     Respondent | ) | |

**PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE
TO THE JOINT MOTION FOR RECUSAL**

On January 25, 2023, Petitioners Mark Isaac Snarr and Edgar Garcia filed a Joint Motion And Memorandum In Support Of Motion For Recusal and a Joint Motion For Leave To Conduct Discovery Regarding Recusal (ECF Nos. 146, 150). The government filed its responses to both Motions on March 8, 2023. (ECF Nos. 156, 157.) The government opposes the Joint Motion for Recusal for three reasons, claiming that the motion is untimely; that it lacks support for its allegations; and it fails to meet the requirements of 28 U.S.C. § 455. (ECF No. 156 at 1.) These arguments fail for the reasons below.

**ARGUMENT**

    **I.**    **Mr. Snarr's Joint Motion to Recuse is Timely**

As the government notes, the Fifth Circuit has "declined to adopt a per se rule on untimeliness." (ECF No. 156 at 6 (citing *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998))). Rather, a party must raise recusal "at a reasonable time in the litigation." *Hollywood Fantasy Corp. v. Gabor,* 151 F.3d 203, 216 (5th Cir.1998). This is to "prevent litigants from taking the heads-I-win-tails-you-lose position of waiting [and] if they lose moving to disqualify a judge who voted against them," *Smith v. BP Expl. & Prod., Inc.*, 2022 WL 17403568, at *4–5 (E.D. La. Dec. 2, 2022). In both cases relied upon by the government the movants were denied relief precisely for this reason. *See Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410–11 (5th Cir. 1995); *Andrade v. Chojnacki*, 338 F.3d 448, 459 (5th Cir. 2003).

However, even engaging in this type of behavior does not constitute a *per se* violation of the timeliness requirement. *See Sanford,* 157 F.3d at 988–89. Despite *Travelers,* the Fifth Circuit has held that

1

movants that "knew of the basis for the recusal for a considerable time" are timely as long as they file prior to any adverse ruling by the court. *United States v. Anderson*, 160 F.3d 231, 234 (5th Cir. 1998). And timeliness concerns are insufficient to dispose of a meritorious motion for recusal. *See, e.g., Delesdernier v. Porterie,* 666 F.2d 116, 121 (5th Cir. 1982) (purpose of the statute is "not served by permitting an arguably biased judge to remain in a case simply because an incompetent or insufficiently diligent counsel failed to raise a timely objection"); *In Re: Highland Capital Management, L.P., Reorganized Debtor.,* No. 19-34054-SGJ-11, 2023 WL 2395677, at *6 (Bankr. N.D. Tex. Mar. 6, 2023) (courts will "analyze the [presumptively untimely] motion as though it is timely" when it "raise[s] serious issues").

Mr. Snarr's Joint Motion has been filed at a "reasonable time in the litigation" prior to any adverse ruling; "raises serious issues" regarding his right to a fair trial; and is filed in a capital case, thus requiring a heightened standard of review. (ECF No. 146 at 23–24.)

## II. The Government's Factual Contentions are Meritless

The government alleges that Movants were attempting to force the Court's hand when they filed their Joint Motion for Recusal on the public docket simply because they filed their Amended § 2255 Motions under seal. (ECF No. 156 at 1–2.) This is not the case. The Amended Motion and its exhibits were sealed because they contained confidential records that implicated security concerns. (ECF Nos. 119, 125.) None of these records are implicated in the Joint Motion or its Attachments. While Mr. Snarr described the nature of Claim I of his Amended Motion, he did not quote any portions of the claim and instead directed opposing counsel and the Court to the relevant text or exhibits in the sealed record. Mr. Snarr sealed Attachment 2 because the declaration was also an exhibit to the Amended Motion and therefore was previously sealed by the Court. (ECF Nos. 148, 149.)

The government then argues that Harper's in-court statement on October 30, 2009 was sufficient to put the parties on notice that the Court was not following the Jury Plan and instead creating a "new" jury wheel.[1] But Harper specifically stated that the creation of this wheel was the "first step in

---

[1] If, as the government claims, this statement put the parties on notice that the Jury Plan and JSSA were being violated, then defense counsel should have investigated and raised a claim immediately. The failure to do so would amount to constitutional ineffectiveness and provide cause for Mr. Snarr's default of the claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). (ECF No. 123 at 188; ECF No. 144 at 85).

2

our procedure, *which is outlined by our jury plan*," and offered to provide a copy of the Jury Plan to the parties. (Tr. 10.30.2009 at 10–11) (emphasis added). Nothing in her statement could have been interpreted as the Court, its staff, or its contractors deviating from the Jury Plan or conducting a non-random jury selection, which is the heart of the violation he now alleges. (ECF No. 144 at 26–30.)

The government protests that Mr. Snarr shows "nothing [beyond Harper's in-court statement] about the jury wheel and how it was populated," (ECF No. 156 at 3, 12) and complains that Mr. Snarr's "conclusions about how the jury wheel was populated have not been verified by the government," (*id.* at 4). But Mr. Snarr described and attached to his Joint Motion correspondence between counsel, Court staff, and its contractor that detailed how this Court created the 2009 Special Wheel and how habeas counsel learned of this process. (ECF No. 146 at 3–11; ECF No. 146-2.) These documents, along with Jeffery Martin's expert declaration interpreting the raw data provided directly from the Court, were also attached to Mr. Snarr's Amended § 2255 Motion. (ECF No. 123-13 at 3242–3343.) The government could have disputed Mr. Snarr's factual allegations or presented its own evidence or expert opinion but did not. (ECF No. 134 at 29–42; ECF No. 144 at 30, 38).[2]

The government next argues Mr. Snarr was "insinuating that *any* contact between the Court and Harper about *any* aspect of the jury selection process without counsel would have been inappropriate[.]" (ECF No. 156 at 4 (emphasis in original).) To the contrary, Mr. Snarr agrees communication between court staff and the Court would be expected, as the Court is required to supervise the creation of the wheel. (ECF No. 156 at 4). Mr. Snarr only meant to point out that the process envisioned by the Jury Plan would not occur on the record, and thus did not "occur[] in the course of judicial proceedings." *Liteky v. United States,* 510 U.S. 540, 556 (1994). (ECF No. 146 at 17–20.)

Finally, the government argues that "[b]ecause movants' Section 2255 claims are procedurally and legally barred, the grounds advanced in their peripheral motions to recuse are irrelevant." (ECF No. 156 at 6, 19.) But as noted in Mr. Snarr's Joint Motion, requiring the Court to determine whether these claims are procedurally barred prior to ruling on the recusal motion would not only be an inefficient use

---

[2] Furthermore, Mr. Martin did not "back into an opinion," (ECF No. 156 at 5), but rather performed standard mathematical analyses to determine that there were statistically significant under-representations of voters of color and over-representations of older voters and married couples in the 2009 Special Wheel, (ECF No. 149), providing a basis for Mr. Snarr's JSSA and constitutional jury claims.

of judicial resources but also would be subject to the appearance of impartiality and implicate this Court's personal knowledge of evidentiary facts and relationships with court staff. (ECF No. 146 at 1–2, 13–14.)

### III. Mr. Snarr is Entitled to Recusal Under 28 U.S.C. § 455

The government cites *Andrade* for the proposition that recusal motions should be reviewed with "reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'" 338 F.3d at 455 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). But *Jordan* itself "recognized the problem with implementing this objective standard." 49 F.3d at 156. Because judges "who are asked to recuse themselves are reluctant to impugn their own standards… we are mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary." *Id.* at 156–57; *see also Liljeberg*, 486 U.S. at 864–65 (the public is "often all too willing to indulge suspicions and doubts concerning the integrity of judges"). Thus, while the judge sitting in review of their own recusal motion is not required to take the position of a "hypersensitive" person, they must also guard against their "reluctan[cy]" to question their own impartiality.

#### A. The Court's impartiality might reasonably be questioned

The government argues that "only the most hypersensitive, cynical, and suspicious person would believe that the Court—a busy federal district judge—somehow participated in the 'fully-automated' process or, in fact, had any knowledge of it." (ECF No. 156 at 11.) As the government recognizes, however, the Jury Plan requires the Clerk of Court to "act under the supervision and control of the judges of the district." The government cannot have it both ways. Either, as the government claims, the Court was overwhelmed with its judicial tasks and not properly overseeing the process that resulted in a statutory and constitutional violation, or it was overseeing and approving the process that produced those violations. In either situation, this Court's "impartiality might reasonably be questioned." § 455(a).

#### B. The Court has personal bias towards the parties involved and personal knowledge of disputed evidentiary facts

In *United States v. Lechuga*, relied on by the government, although the court received information *ex parte*, the "evidence later presented in court regarding the purported threat *covered and exceeded the information* provided in his personal briefings." 820 F. App'x 261, 263 (5th Cir. 2020) (unpublished) (emphasis added). Because the information provided off-the-record was ultimately "tested through the

4

adversary process," *United States v. Craven*, 239 F.3d 91, 103 (1st Cir. 2001), and was thus not "unknowable" to counsel, *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996), it is not considered extrajudicial for the purposes of § 455. But here, Mr. Snarr has demonstrated that the Court has personal bias and personal knowledge that stems from an extrajudicial source. (ECF No. 146 at 17–20.)

Furthermore, because the existence of an extrajudicial source is not a dispositive factor in the § 455(b)(1) analysis, *Liteky*, 510 U.S. at 554–55, the *Lechuga* court continued to evaluate whether "[a] reasonable person who is cognizant of the relevant circumstances would not harbor legitimate doubts about [the judge's] impartiality." 820 F. App'x at 264. If this Court determines that the creation of the jury wheel occurred in the course of judicial proceedings, it should nonetheless conduct a similar inquiry.

### C. The Court is likely to be a material witness in the proceeding

To obtain recusal under § 455(b)(5)(iv), Mr. Snarr must demonstrate that this Court is "*likely* to be a material witness in the proceeding." (emphasis added). Neither case the government points to supports their opposition to Mr. Snarr's Motion on this basis. In *Daker v. Warren*, recusal was not required because the movant, an inmate bringing a civil suit against the state, only "speculat[ed]" the "judge might be called as a witness by the state in a criminal proceeding." 779 F. App'x 654, 658 (11th Cir. 2019). Mr. Snarr is not "speculating" but rather has shown it is "likely" this Court will be a material witness in this proceeding. In *United States v. Pollard*, the movant could not provide any "direct or even hearsay evidence that an *ex parte* submission had been received." 959 F.2d 1011, 1031 (D.C. Cir. 1992). In contrast, Mr. Snarr raised specific facts and statutory requirements indicating that a violation of the Jury Plan, the JSSA, and the Constitution occurred. (ECF No. 146 at 3–11.)

### CONCLUSION

For the reasons stated in this reply and the Joint Motion, Mr. Snarr respectfully requests the Court to grant his motion to recuse and assign this case to a judge outside the Eastern District of Texas.

Respectfully submitted,

/s/ Lindsey Layer

Jon M. Sands
Federal Public Defender
Lindsey Layer (VA No. 79151)
Megan Barnes (SC No. 104368)

Assistant Federal Public Defenders
850 W. Adams St., Suite 201
Phoenix, AZ 85007
lindsey_layer@fd.org
megan_barnes@fd.org
(602) 382-2816 Telephone
(602) 889-3960 Facsimile

Kathryn Nester
Nester Lewis PLLC
50 W. Broadway, Suite 300
Salt Lake City, UT 84101
kathy@nesterlewis.com
(801) 535-5375 Telephone

**Certificate of Service**

I hereby certify that on March 22, 2023, I electronically filed the foregoing Petitioner's Reply to Government's Response to the Joint Motion for Recusal with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

*/s/ Daniel Juarez*
Assistant Paralegal
