**UNITED STATES DISTRICT COURT**         **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| MARK ISAAC SNARR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:13-CV-724 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Before the court is Movant Mark Isaac Snarr's ("Movant") Joint Motion and Memorandum in Support of Motion of Recusal ("Motion to Recuse") (#146)[1].  Movant seeks to recuse the undersigned pursuant to 28 U.S.C. § 455.  More specifically, Movant seeks recusal pursuant to Sections 455(a), (b)(1), and (b)(5)(iv).  He contends that the undersigned should be recused because of what Movant believes to be irregularities in the creation of the jury wheel for the selection of Movant's petit jury for his 2010 federal death penalty criminal trial in Cause No. 1:09-cr-15(1), *United States of America v. Mark Isaac Snarr*.  He ultimately asserts that the creation of the jury wheel—from which the venire persons were randomly selected—does not comport with the provisions of the Jury Service and Selection Act of 1968 ("JSSA"), 28 U.S.C. §§ 1861-78, *et seq.*, and that his Sixth Amendment right—to a venire pool drawn from a jury wheel that represents a fair cross-section of the community—was violated.

---

[1] The pending motion states:  "Mr. Garcia and Mr. Snarr respectfully jointly move for recusal of Judge Crone," yet Movant and Edgar Garcia filed separate motions regarding recusal in their respective habeas proceedings.  *See Mark Isaac Snarr v. United States of America*, Cause No. 1:13-cv-724 ("No. 1:13-cv-724"), #146; *Edgar Baltazar Garcia v. United States of America*, Cause No. 1:13-cv-723 ("No. 1:13-cv-723"), #160.  Accordingly, the court will rule on the motions separately.

This matter is currently before the court on federal habeas review, rather than on the eve of trial when the majority of recusal motions are filed.  Movant's motion is a collateral attack on his underlying 2010 federal criminal trial and does not appear to be a legitimate complaint about the alleged lack of impartiality or the appearance of partiality on the part of the undersigned. Having considered the Motion to Recuse (#146), the Government's Response to Joint Motions to Recuse ("Response") (#156), Movant's Reply to Government's Opposition to Motion for Recusal ("Reply") (#161), and all other relevant pleadings, the court is of the opinion that Movant's Motion to Recuse should be denied.

I.    Procedural History

On January 21, 2009, a federal grand jury returned a one-count indictment against Movant and Edgar Garcia ("Garcia") charging them with murdering a fellow inmate at the United States Penitentiary in Beaumont, Texas, in violation of 18 U.S.C. §§ 1111 and 2.  *United States of America v. Snarr et al.*, Cause No. 1:09-cr-015 ("No. 1:09-cr-015") (#7).  The indictment provided notice of special findings for both Movant and Garcia, and on February 9, 2009, the Government filed notice of its intent to seek the death penalty against both defendants.  (No. 1:09-cr-015, #19).

On April 6, 2010, jury selection began, which spanned more than two weeks[2]—and allowed the parties to question the venire persons individually and raise challenges to each venire person's

---

[2] General *voir dire* took place on April 6, 2010, and April 7, 2010.  (No. 1:09-cr-015, ##383-84). Individual *voir dire* was conducted from April 12, 2010, through April 26, 2010.  (*Id.*, ##385-95).

fitness to sit as a petit juror on Movant's federal death penalty trial.[3]  (No. 1:09-cr-015, #383). A petit jury of twelve jurors and five alternates was chosen.  (*Id.*, #396 at 19).

On May 7, 2010, the jurors deliberated and returned guilty verdicts against both Movant and Garcia for the fellow inmate's murder.  (*Id.*, #303).  On May 12, 2010, the petit jury unanimously concluded that Movant and Garcia were eligible for the death penalty.  (*Id.*, #317). That same day, the court began the selection phase of Movant and Garcia's trial.  On May 24, 2010, the jury unanimously selected the death penalty as the appropriate punishment for both Movant and Garcia.  (*Id.*, #339, 350).  The court subsequently sentenced Movant and Garcia to death in accordance with the jury's determination. (*Id.*, #352).

Movant and Garcia appealed their convictions and death sentences.  The United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences.  *United States v. Snarr*, 704 F.3d 368, 377 (5th Cir. 2013), *cert. denied*, 571 U.S. 1195 (2014).

On February 20, 2015, Movant filed his initial Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to Section 2255 ("Motion to Vacate").  (No. 1:13-cv-724, #23).  He filed a supplement to his initial Motion to Vacate on April 7, 2018.  (#66).  Movant filed his Amended Motion to Vacate six and a half years later, in November 2021.  (No. 1:13-cv-724, #107).  His Amended Motion to Vacate was stricken because of excessive pages.  (#114).  Movant's conformed Amended Motion to Vacate was filed in January 2022 and is the operative pleading in this federal habeas proceeding.  (#123).  The Government filed its Amended Response in Opposition to Motion for Collateral Relief pursuant to 28 U.S.C. § 2255 ("Amended 2255 Response") (*Id.*, #134) in April 2022.  Movant filed his Reply to Government's Amended Answer

---

[3] The court notes that no objections were raised to the selection of venire persons from the relevant jury wheel at any time before, during, or after the jury selection process.  (*Id.*, ##385-95).

3

to Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255 ("2255 Reply") in July 2022.  (*Id.*, #144).  Movant's Amended Motion to Vacate (#123) is pending before the court.

II.    Background

Before the creation of the jury wheel, on October 30, 2009, in compliance with the JSSA, a status conference hearing was held to discuss the creation of the jury wheel and the juror questionnaire process for Movant and Garcia's criminal jury trial that was set to begin in April 2010.  Status Conference Transcript ("SC Tr."), 10/30/2009 at 10-11.  No objection was raised at the status conference hearing regarding the creation of a new jury wheel or the method of creating the jury wheel by any party.[4]  *Id.*  Thereafter, the jury qualification questionnaires were sent to prospective venire persons, and those who were qualified to serve[5] and not exempt were

---

[4] Beth Harper ("Harper"), the Eastern District of Texas's jury coordinator, attended the status conference to "discuss the progress being made on getting the jury."  SC Tr., 10/30/2009 at 10-11; (No. 1:09-cr-015, #379 at 10-11).  Harper informed the parties that a "new" jury wheel was being created for this case.

> THE COURT:  All right.  Ms. Harper, do you want to come talk about the jury?
>
> MS. HARPER:  We are just now starting the process of building our new jury wheel for this case.  We will be sending out approximately 1500 to 1700 jury qualification questionnaires.  That is our first step in our procedure, which is outlined by our jury plan.
>
> (Reading)  Prospective jurors will be mailed a qualification questionnaire form to complete and return to the court.  After the court determines that they are qualified to serve, the names are entered into a pool and then they will be randomly summoned for the jury selection date . . . .  The juror names are chosen at random from a master registration list that is maintained by the Secretary of State of all persons registered to vote.
>
> And I do have a copy of the jury plan and the juror questionnaire that we'll be sending out, if each side would like a copy of that.
>
> SC Tr. at 10-11.

[5] The returned juror qualification forms are used to determine whether a person qualifies to serve as a juror.  Under the JSSA, a person is qualified to serve as a grand or petit juror unless he or she:  (1) is not a citizen of the United States, is not 18 years of age or older, or has not resided for one year within

summoned.  Both the Movant's trial counsel and the Government were allowed to review the juror questionnaires of the summoned venire persons and use the questionnaires to question the 308-member venire panel.  (No. 1:13-cv-724, #146 at 6).  During the *voir dire*, the parties questioned the venire persons generally and individually and raised challenges to each venire person's fitness to sit as a petit juror on Movant's federal death penalty trial.  A petit jury of twelve jurors and five alternates was chosen.  (No. 1:09-cr-015, #396 at 19).

Movant seeks now, in 2023, to recuse the undersigned from ruling upon his pending Motion to Vacate, even though the alleged conduct which is the basis of his motion occurred prior to Movant's 2010 federal criminal trial.  Movant further contends that all judges of the Eastern District of Texas should be recused from reviewing his Motion to Vacate pursuant to Section 2255.

III.   Standards

Section 455, governing disqualification of federal judges, contains two parts:  Section 455(a) is a general catchall provision, while Section 455(b) enumerates specific circumstances when a judge must recuse.  Movant cites both subsections in his Motion to Recuse.  Under Section 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

---

the district, (2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form, (3) is unable to speak the English language, (4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service, or (5) has a charge pending against him or her for the commission, or has been convicted in a state or federal court, of a crime punishable by imprisonment for more than one year and his or her civil rights have not been restored.  28 U.S.C. § 1865(b).  The returned juror qualification forms are also used to review requests for excuses and exemptions from jury service.

Section 455(b) contains five grounds for recusal.  A judge must disqualify himself where: (1) "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"; (2) "in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it"; (3) "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy"; (4) "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding"; or (5) "[h]e or his spouse . . . is a party to the proceeding," "acting as a lawyer in the proceeding," "[i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding," or "[i]s to the judge's knowledge likely to be a material witness in the proceeding." 28 U.S.C. § 455(b).

The standard under Section 455 is objective:  "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *United States v. Brocato*, 4 F.4th 296, 301 (5th Cir. 2021) (per curiam) (quoting *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).  When applying this standard, it is important to keep in mind that a "judge is as much obligated not to recuse himself when it is not called for as he is obligated to when it is." *McClelland v. Gronwaldt*, 942 F. Supp. 297, 302 (E.D. Tex. 1996).  The decision

whether to recuse under Section 455 is committed to the sound discretion of the court. *See Garcia v. City of Laredo*, 702 F.3d 788, 793-94 (5th Cir. 2012), *cert. denied*, 570 U.S. 918 (2013).

Under Section 455, Movant, as the party moving to recuse, bears "a heavy burden of proof" in showing that the court should recuse. *E.g.*, *United States v. Reggie*, No. 13-111-SDD-SCR, 2014 WL 1664256, at *2 (M.D. La. Apr. 25, 2014). The recusal inquiry is "extremely fact intensive and fact bound" and requires "a close recitation of the factual basis for the . . . recusal motion" by the movant. *Jackson v. Valdez*, 852 F. App'x 129, 133 (5th Cir. 2021) (quoting *Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343, 346 (5th Cir. 2000)), *cert. denied*, 142 S. Ct. 863 (2022).

The United States Supreme Court has made clear that "[t]he recusal inquiry must be made from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 541 U.S. 913, 924 (2004). The Fifth Circuit has interpreted this mandate to mean that "[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person," while remaining "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary" would be. *Jordan*, 49 F.3d at 156-57. Recusal would be proper if a court determines that a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. *See Sao Paolo State of Federative Republic of Braz. v. Am. Tobacco Co.*, 535 U.S. 229, 232-33 (2002).

IV.    Discussion and Analysis

A.    JSSA and Sixth Amendment Claims

As an initial matter, the application of 28 U.S.C. §§ 1867(a) and (e) to Movant's underlying claim that irregularities existed in the creation of the jury wheel for his 2010 federal criminal trial is essential and resolves several issues raised by Movant.  Movant contends that the undersigned's lack of impartiality or appearance of partiality arises from his JSSA[6] and Sixth Amendment claims regarding the jury wheel utilized for his federal criminal trial.  More specifically, the basis of Movant's claim is that the undersigned should be recused because the undersigned will have to consider whether to:  (1) permit discovery, (2) allow an evidentiary hearing, (3) apply a cause and prejudice test, and (4) evaluate his substantive claim regarding his underlying JSSA and Sixth Amendment challenges in resolving this claim on habeas corpus review.  (#146 at 13).  He also intends to call the undersigned as a "material" witness to testify as to her knowledge of the creation of the jury wheel.

Movant errs in raising these claims substantively and in a Motion to Recuse because he did not comply with the statutory mandates of 28 U.S.C. §§ 1867(a) and (e) and fails to state a *prima facie* case regarding his Sixth Amendment fair cross-section of the community claim.

---

[6] The JSSA provides that all litigants in federal court entitled to a trial by jury "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.  In addition, "all citizens shall have the opportunity to be considered for service on grand and petit juries . . . and shall have an obligation to serve as jurors when summoned for the purpose."  *Id.*  A citizen cannot be excluded from jury service "on account of race, color, religion, sex, national origin, or economic status."  *Id.* § 1862.

1.      28 U.S.C. §§ 1867(a) and (e)

Section 1867(a) provides:

> In criminal cases, before the voir dire examination begins, or within seven days
> after the defendant discovered or could have discovered, by the exercise of
> diligence, the grounds therefor, *whichever is earlier*, the defendant may move to
> dismiss the indictment or stay the proceedings against him on the ground of
> substantial failure to comply with provisions of this title in selecting the grand or
> petit jury.

28 U.S.C. § 1867(a) (emphasis added).  Thus, any claim under the JSSA must be brought no later than the beginning of voir dire.  *United States v. Rosbottom*, 763 F.3d 408, 415 (5th Cir. 2014) (holding that defendant's claim under the JSSA was untimely because defendant did not file a motion or sworn statement before the voir dire examination began), *cert. denied*, 574 U.S. 1078 (2015); *United States v. Smith*, No. CR 19-324 (BAH), 2022 WL 425059, at *13 (D.D.C. Feb. 11, 2022) (holding that the beginning of voir dire is the latest possible time to bring a JSSA challenge).  There is no indication in the record of Cause No. 1:09-cr-015(1), *United States of America v. Mark Isaac Snarr*, that Movant moved to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the JSSA.  In fact, Movant acknowledges that he did not bring this jury claim prior to trial.  (No. 1:13-cv-724, #146 at 1).  By failing to act timely as directed by § 1867(a), a defendant waives his objection under the JSSA.

The JSSA mandates in § 1867(e):

> The procedures prescribed by this section shall be the exclusive means by which
> a person accused of a Federal crime, the Attorney General of the United States or
> a party in a civil case may challenge any jury on the ground that such jury was not
> selected in conformity with the provisions of this title.  Nothing in this section shall
> preclude any person or the United States from pursuing any other remedy, civil or
> criminal, which may be available for the vindication or enforcement of any law

> prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

28 U.S.C. § 1867(e).  The Fifth Circuit has explained that the JSSA "is to be strictly construed, and failure to comply precisely with its terms forecloses a challenge." *Rosbottom*, 763 F.3d at 415 (quoting *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. Unit B 1981)).

The court notes that Congress used the plain language of "exclusive means" in Subsection (e) pertaining to the ability of a criminal defendant to challenge defects asserted under the JSSA. The language implies that Congress did not intend criminal defendants to raise any JSSA challenges in proceedings beyond jury selection.  Because Movant failed to comply with § 1867(a), he is now foreclosed or barred from asserting a claim under the JSSA in this context. *See United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109 (1986); *United States v. Green*, 742 F.2d 609, 612 (11th Cir. 1984).  Hence, to the extent that the Motion to Recuse seeks recusal based on an alleged JSSA violation, his motion is also foreclosed.

## 2. The Sixth Amendment

Movant also raises a challenge under the Sixth Amendment's right to a venire pool selected from a jury wheel that represents a fair cross-section of the community.  *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1976).  The Sixth Amendment guarantees a criminal defendant the right to a trial by a jury selected at random from a fair cross-section of the community.  *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor*, 419 U.S. at 537); *see United States v. Simpson*, 645 F.3d 300, 312 (5th Cir.), *cert. denied*, 565 U.S. 994 (2011); *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996).  The fair-cross-section guarantee applies to both grand and petit juries. *Peters v. Kiff*, 407 U.S. 493, 504 (1972); *Murphy v. Johnson*, 205 F.3d 809, 817-18 (5th Cir.),

10

*cert. denied*, 531 U.S. 957 (2000).  A defendant is not entitled to a grand or petit jury that consists of a particular racial composition because there is no requirement that the "juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538.  "[B]ut the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.*

Nevertheless, as the Fifth Circuit has recognized, "a jury list drawn objectively, mechanically, and at random from the entire voting list of a [district] is entitled to the presumption that it is drawn from a source which is a fairly representative cross-section of the inhabitants of that jurisdiction.  The presumption, of course, is rebuttable but the challenger must carry the burden of showing that the product of such a procedure is, in fact, constitutionally defective." *Thompson v. Sheppard*, 490 F.2d 830, 833 (5th Cir. 1974), *cert. denied*, 420 U.S. 984 (1975); *see United States v. Quiroz*, 137 F. App'x 667, 670 (5th Cir. 2005), *cert. denied*, 546 U.S. 1139 (2006).

To establish a constitutional defect, namely, a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement, a defendant must demonstrate:

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  The intent to discriminate forms no part of the fair-cross-section analysis.  *Id.* at 368 n.26.[7]  If the defendant establishes a *prima facie* case, the burden shifts to the government to prove "that a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group."  *Id.* at 367-68.

In order to state a claim under the fair cross-section requirement, Movant must show that a distinctive group is generally and systematically excluded from jury venires.  *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986); *see United States v. DeFries*, 129 F.3d 1293, 1301 (D.C. Cir. 1997) ("Underrepresentation of a cognizable group in a single venire, without evidence of a greater pattern, is insufficient to establish the 'systematic exclusion of the group' required by *Duren*[8] . . . .  From a small sample size based on one venire it is difficult to determine whether the disparity is random or systemic." (citations omitted)); *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir.) ("Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion."), *cert. denied*, 493 U.S. 874 (1989); *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985) (holding that the *Duren* Court's use of the plural when describing "venires" from which "juries" are selected indicated that a violation of the underrepresentation element cannot be premised on underrepresentation on a single jury venire).  Movant has not alleged, much less demonstrated, general and systematic exclusion of a distinctive group from jury

---

[7] In contrast, an equal protection claim for discrimination in the selection of grand or petit juries requires the defendant to show purposeful or intentional discrimination.  *Castaneda v. Partida*, 430 U.S. 482, 493 (1977).

[8] *Duren*, 439 U.S. at 364.

venires in the Eastern District of Texas.  Accordingly, Movant has failed to meet the standard required to establish a Sixth Amendment violation regarding the venire pool.

Given that Movant's underlying JSSA challenge is foreclosed by his failure to comply with §§ 1867(a) and (e) and his Sixth Amendment challenge to the jury wheel and/or venire fails to state a claim, Movant's Motion to Recuse is without basis.  Movant's attempt to bolster his challenges to the 2010 jury wheel alleged in his Motions to Vacate through a Motion to Recuse is unavailing and untimely.  Moreover, the need of the court to rule upon whether to:  (1) permit discovery, (2) allow an evidentiary hearing, (3) apply a cause and prejudice test, or (4) evaluate his substantive claim regarding Movant's underlying JSSA and Sixth Amendment challenges (No. 1:13-cv-724, #146 at 13) is foreclosed by Movant's failure to comply with Section 1867(a) and (e) as well as his failure to demonstrate that a distinctive group is generally and systematically excluded from jury venires.  On this basis, Movant's Motion to Recuse is denied as unfounded.

B.     Timeliness of the Motion to Recuse

In the alternative, the Government urges that Movant's Motion to Recuse should be denied as untimely.  (*Id.*, #156 at 6-7).  The jury wheel utilized in Movant's case was created in late 2009 for his April 2010 federal criminal trial.  (No. 1:09-cr-015, #379 at 10-11).  As noted above, no party objected to the creation of the jury wheel or the resulting venire panel from which the petit jury was chosen.  Thirteen years have passed since the selection of Movant's petit jury.  In his direct appeal to the Fifth Circuit, Movant did not raise either an issue or an objection regarding

the creation of the jury wheel or the resulting venire panel from which the petit jury was chosen.[9, 10]  *Snarr*, 704 F.3d at 368.

The first time Movant raised a concern regarding the creation of the jury wheel for the jury selection process was in 2015, when Movant filed his initial Motion to Vacate, Set Aside, or Correct the Sentence pursuant to Section 2255 ("Motion to Vacate") asserting that his counsel provided ineffective assistance of counsel because they failed to investigate and object to the creation and composition of the jury wheel.  (No. 1:13-cv-724, #23 at 163-68).  Movant did not assert his contention then that the court was biased or prejudiced against him in the creation or use of the jury wheel.  (*Id.*).  He did not file a recusal motion at that time, follow the mandates of 28

---

[9] THE COURT:  All right.  Now we'll have the jury sworn in.

(Oath administered to jury)

THE COURT:  Is there any objection to the jury as impaneled?

MR. BATTE:  No, your Honor.

Mr. MORROW:  Your Honor, just subject to our earlier motions.

Mr. BARLOW:  That's correct, your Honor, just subject to the previous rulings of the court and the positions that were taken.

THE COURT:  Okay.  All right.  Have a seat.

Guilt/Innocence Phase Transcript, Vol. 1, at 19; (No. 1:09-cr-015, #396 at 19).

[10] At trial and on appeal to the Fifth Circuit, Movant contended:  (1) that the court improperly excluded for cause five prospective jurors who expressed reservations about imposing the death penalty, (2) that the court erred in dismissing a venire person who indicated that he had a physical infirmity that would impair his ability to render effective jury service, and (3) that the court improperly denied Movant's for cause challenges to three prospective jurors; all of these challenges were rejected by the appellate court. *Snarr*, 704 F.3d at 379.

U.S.C. § 1867(a), or allege facts asserting a *prima facie* violation of the Sixth Amendment's fair cross-section of the community requirement.

Given that Movant contended his trial counsel should have investigated and objected to the creation and composition of the jury wheel in his initial Motion to Vacate (No. 1:13-cv-724, #23 at 163-68), he was arguably on notice in 2015 of a potential issue regarding the jury wheel when he filed his initial Motion to Vacate. Movant, however, waited until 2023 to file the Motion to Recuse—eight years after Movant filed his initial Motion to Vacate. Movant does not explain why he waited eight years to raise the issues asserted in his Motion to Recuse.

Movant filed his conformed Amended Motion to Vacate in January 2022. (*Id.*, #123). He filed his Reply to the Government's Response in July 2022. (*Id.*, #144). Six months after he filed his Reply (*Id.*, #144) to the Government's Response to the Motion to Vacate, Movant filed his Motion to Recuse. (*Id.*, #146). In response to the Government's arguments regarding timeliness, Movant contends that the Motion to Recuse is not untimely as long as it filed prior to any adverse ruling made by the court. (*Id.*, #161 at 2). Movant's argument ignores and fails to address the court's paramount adverse ruling—sentencing Movant to death in accordance with the jury's determination. (1:09-cr-15, #352). Movant's argument fails to persuade.

The Government maintains that: (1) the underlying creation of a jury wheel claim should have been raised in 2009 or 2010 when it was pertinent to the trial and not thirteen years later; (2) the Motion to Recuse was filed eight years after Movant's initial Motion to Vacate was filed and six months after Movant's Reply was filed; (3) the underlying claim was not raised in Movant's

initial Motion to Vacate, except as an ineffective assistance of counsel claim;[11] and (4) Movant's claims under the JSSA and the Sixth Amendment fair-cross-section guarantee are both legally and procedurally barred. (*Id.*, #156 at 2-7). The timing of Movant's Motion to Recuse begs the question of whether the Motion to Recuse "may have been designed primarily to force the judge to recuse himself," *United States v. Pollard*, 959 F.2d 1011, 1031 n.13 (D.C. Cir.), *cert. denied*, 506 U.S. 915 (1992), especially in light of Movant's request to recuse the entirety of the Eastern District of Texas judiciary.

The Fifth Circuit infers a "timeliness requirement from § 455," but has "declined to adopt a *per se* rule on untimeliness." *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998) (citing *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 216 (5th Cir. 1998)), *cert. denied*, 526 U.S. 1089 (1999); *see Andrade v. Chojnacki*, 338 F.3d 448, 459 n.5 (5th Cir. 2003), *cert. denied sub nom. Thompson v. Chojnacki*, 541 U.S. 935 (2004). "The general rule on timeliness requires that 'one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *Sanford*, 157 F.3d at 988 (quoting *Travelers Ins. Co. v. Lijeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)); *see In re Pendergraft*, 745 F. App'x 517, 520 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1240 (2019).

As far as the creation of the jury wheel is concerned, Movant was aware in 2009 that a "new" jury wheel was being created for his capital murder trial. SC Tr. 10/30/2009, at 10-11.

---

[11] Although Movant sought and obtained leave of court to amend his initial § 2255 motion to clarify his existing claims, he did not seek leave to raise new claims asserted in his amended § 2255 motion. Amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). If a proposed amendment does not relate back to the original motion to vacate, the amendment is time-barred under the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2255(f)(1).

As to the manner in which the jury wheel was populated, Movant was offered a copy of the existing jury plan at the Status Conference hearing held on October 30, 2009.  (SC Tr. at 11). Even if an error occurred with respect to the manner in which the wheel was created, Movant's counsel were able to observe personally and evaluate the resultant 308 venire members during the two days of general *voir dire* (No. 1:09-cr-15, ##383-84) and the two weeks of individual *voir dire* (*Id.*, ##385-95).

In addition to the identifying information contained in the jury questionnaires, Movant's counsel were able to inspect visually and review the gender, race, and ethnicity of each of the 308 venire members during this time for purposes of the Sixth Amendment's fair cross-section requirement.  Even the circumstance of eight married couples appearing in the 308-member venire panel was apparent during jury selection.[12]  (*Id.*, #393 at 2298, 2332-34, 2351).  No objection, however, was raised to the venire panel as a whole.  (*Id.*, ##383-84, ##385-95).  Movant's expert declaration (1:13-cv-724, #149), attached to his Motion to Recuse (#146), is dated November 18, 2021 (*Id.*, #149 at 19), and is the same declaration that is attached to his Amended Motion to Vacate (*Id.*, #123-13 at 44-61), filed on January 14, 2022.  Without regard to the veracity or correctness of the declaration, Movant has had the declaration in his possession since November 2021, but he did not file the Motion to Recuse until January 25, 2023.  (*Id.*, #146).  Movant does not adequately explain the reason for the delay in filing his Motion to Recuse.  (#161 at 1-2).

---

[12] Despite Movant's skepticism, the presence of married couples, neighbors, co-workers, and other relatives on the same venire panel is not impossible nor improbable—especially as large as this panel was. The Beaumont Division consists of a number of small rural counties wherein families and neighbors have lived and worked side-by-side for generations.  No married couples, however, served on the jury in the case at bar.

The timeliness requirement of Section 455 obligates a party to raise the disqualification issue "at a reasonable time in the litigation." *Hollywood Fantasy Corp.*, 151 F.3d at 216 (quoting *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989)). "[Our] general rule on timeliness requires that 'one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *Sanford*, 157 F.3d at 988 (quoting *Travelers Ins. Co.*, 38 F.3d at 1410); *see In re Pendergraft*, 745 F. App'x at 520.  The Fifth Circuit has rejected recusal challenges on appeal as untimely when the challenger waited to see if he liked an outcome before asserting the recusal issue. *See Sanford*, 157 F.3d at 988-89 ("The most egregious delay—the closest thing to *per se* untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal.").

The assertions included in the declaration (1:13-cv-724, #146-3) that Movant submitted in support of his Amended Motion to Vacate are the same factual allegations on which Movant bases his Motion to Recuse under §§ 455(a) and (b)(1).  The factual allegations all stem from sources of public information that were available well before Movant filed his Motion to Vacate on February 20, 2015.  Movant fails to provide a sufficient explanation for his delay.  Movant's Motion to Recuse is, therefore, denied as untimely.

C.     Recusal under 28 U.S.C. § 455(a)

Section 455(a) pertains to the appearance of partiality in general. *Andrade*, 338 F.3d at 454.  "[Section] 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings," such that

18

recusal is required "if it appears that [the judge] harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky v. United States*, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring); *accord Brocato*, 4 F.4th at 302. Movant's success depends upon his ability to clear the foregoing hurdles; he must: (1) demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin, (2) place the offending event into the context of the entire trial, and (3) do so by an "objective" observer's standard. *See Andrade*, 338 F.3d at 455. Movant fails to meet the test set out in *Andrade*.

In support of his claim pursuant to § 455(a), Movant argues that the undersigned should be recused because:

> In the present case, the personal bias or personal knowledge of Judge Crone derives from: Judge Crone's role and responsibility as supervisor of the jury selection process; Judge Crone's off the record and *ex parte* communications with jury coordinator, Beth Harper, regarding the process of jury selection in this and other cases involving similar problems with the assembly of the venire; Judge Crone's off the record communications with trial counsel about the selection of the venire in this case; Judge Crone's long-time working relationship with relevant court staff—[Beth Harper, David Maland, and Terry Splawn]—and, Judge Crone's opinion, based on many years of working together, of the credibility of court staff.

(*Id.*, #146 at 17). Movant does not address the underlying problems of his failure to comply with 28 U.S.C. §§ 1867(a) and (e) and his failure to set out a *prima facie* violation of the Sixth Amendment fair-cross-section requirement, which foreclose his Motion to Recuse.

Movant's litany of purported examples of the undersigned's appearance of the lack of impartiality, without more, fails to meet the *Andrade* test. He fails to identify a comment by the undersigned in any of the alleged off-the-record communications with trial counsel or anyone else about the venire in this case that was of extrajudicial origin, that places the offending comment

into the context of the entire trial, and would give the appearance of partiality to a reasonable and objective person, who knows all the facts. *See Andrade*, 338 F.3d at 455. The court notes that Movant did not attach any affidavits or declarations, made under penalty of perjury, from his trial counsel in No. 1:09-cr-015 pointing to a specific comment or comments by the undersigned which give rise to a concern regarding the appearance of partiality.

Moreover, the record offers no support of any off-the-record communications between the undersigned and anyone regarding Movant's actual complaint—how the wheel was populated—and Movant points to no specific instances of *ex parte* communications. Even specific *in camera* statements by a judge are not sufficient to create an appearance of partiality. *Id.* at 456-57.

Likewise, Movant's arguments regarding the court and its staff are lacking.[13] Movant implies that the undersigned's professional relationship and dealings with court staff are improper and constitute engaging in "*ex parte*" communications with court employees.[14] He does not present any legal support for his assertion that the court and its employees are engaging in "*ex parte*" communications when they discuss court business. The court is not a party to the litigation, nor are the court employees. Importantly, Movant fails to identify a comment by the

---

[13] Movant identifies former Clerk of Court David Maland ("Maland"), former Operations Manager Terri Splawn ("Splawn"), and current Jury Coordinator Harper as the three court employees in question. Maland and Splawn both worked in Tyler, Texas, while employed by the court, while Harper was assigned to Beaumont. The undersigned is not related to Maland or Splawn and has no personal relationship with them. Harper works in her separate office within the courthouse and has never worked in or near the undersigned's chambers. The undersigned and Harper are not related, are not neighbors, did not go to school together, have no personal relationship, and do not socialize.

[14] Black's Law Dictionary defines "*ex parte*" as "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other . . . ." *Ex Parte*, BLACK'S LAW DICTIONARY 517 (8th ed. 1999). The undersigned notes that the court is not a party to Movant's litigation and the term "*ex parte*" is not appropriately used by Movant.

undersigned in any off-the-record communication with the court's staff about the venire in this case that was of extrajudicial origin, that places the offending comment into the context of the entire trial, and would give the appearance of partiality to a reasonable and objective person, who knows all the facts. *See id.* at 455.

Furthermore, Movant infers that the court and the three court employees are such close personal friends that the court harbors a personal bias against Movant in favor of upholding his conviction and sentence because of alleged irregularities in the assembly of the jury venire in which they may have been involved. Movant's inference fails the reasonable person test. The facts as alleged by Movant do not describe or even suggest any extrajudicial or judicial relationships that would convince a reasonable person that the undersigned and the three court employees shared a close personal relationship, or that based on that relationship, the undersigned harbors a personal bias against Movant in favor of upholding his conviction and sentence. Recusal is required only when the stated facts establish a personal relationship of such magnitude that the judge cannot be impartial. *See Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*, 29 (Fed. Jud. Ctr. 2002) ("A judge's friendship with one of the attorneys, or acquaintance with witnesses or even parties, does not ordinarily require recusal. However, there are cases where the extent of the intimacy, or other circumstance, renders recusal necessary.").

Here, Movant's subjective belief that the court and the three court employees share a close personal relationship of the magnitude that would convince a reasonable person that the court is biased against Movant in favor of upholding a conviction is pure speculation. *See Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1167 (5th Cir. 1982) (holding that a reasonable person would not be convinced that bias exists based upon pure speculation), *cert.*

21

*denied*, 464 U.S. 814 (1983); *Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 102 (5th

Cir. 1975) (en banc) ("[F]riendship between the judge and counsel for appellees, without more,

is so lacking in merit as to warrant no discussion."), *cert. denied*, 425 U.S. 944 (1976); *United

States v. Olis*, 571 F. Supp. 2d 777, 787 (S.D. Tex. 2008) ("[A judge] must have neighbors,

friends and acquaintances, business and social relations, and be a part of his day and

generation . . . the ordinary results of such associations and the impressions they create in the

mind of the judge are not the 'personal bias or prejudice' to which the statute refers." (quoting

*United States v. Gilboy*, 162 F. Supp. 384, 400 (M.D. Pa. 1958))).

Moreover, the Fifth Circuit in *Andrade* found that the trial judge was not required to recuse

himself based on his long-standing relationships with two of the dismissed defendants.  338 F.3d

at 456.  The court held that the issues were moot as the two defendants were dismissed early in

the case.  Likewise, any concern that Movant harbors regarding the relationship between the

undersigned and Maland and Splawn is also moot, as both retired from federal service some time

ago.

With regard to 28 U.S.C. § 455(a), Movant has failed to demonstrate that, under a

reasonable person standard with knowledge of all the facts, the undersigned should recuse herself

from this case.  Recusal is not justified under § 455(a) because a reasonable person, had he known

of all the circumstances asserted would not harbor doubts about the undersigned's impartiality.

Movant's Motion to Recuse pursuant to § 455(a) is denied.

D.    Recusal under 28 U.S.C. §§ 455(b)(1) and (b)(5)(iv)

Movant moves for recusal of the undersigned pursuant to 28 U.S.C. §§ 455(b)(1) and

(b)(5)(iv).  None of Movant's arguments here explain his failure to comply with the statutory

mandates of 28 U.S.C. §§ 1867(a) and (e) or his failure to set forth a *prima facie* violation of the Sixth Amendment fair cross-section requirement. Movant's failure to comply with the exclusive means to challenge an alleged JSSA violation precludes his arguments here. His failure to state a claim under the Sixth Amendment is further fatal. His Motion to Recuse should be denied, as his arguments are waived.

Without regard to the fact that Movant's underlying issues are foreclosed by §§ 1867(a) and (e)—coupled with his failure to meet the *prima facie* requirements of a Sixth Amendment challenge—he raises the same contentions regarding the undersigned's alleged lack of impartiality in § 455(b)(1) as he did in § 455(a). (*See* 1:13-cv-724, #146 at 17). The court discussed above Movant's claims regarding the nature of the relationships between the undersigned and the court's staff and found his arguments to be speculative, conclusory, and lacking in factual and legal support. *See McClelland*, 942 F. Supp. at 302 ("A judge should not recuse himself based upon unsupported, irrational, or highly tenuous speculation." (quoting *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1501 (10th Cir.), *cert. denied sub nom. Lopez v. Behles*, 513 U.S. 818 (1994))). Even within the context of § 455(b)(1), recusal is not justified because a reasonable person, had he known of all the circumstances asserted, would not harbor doubts about the undersigned's impartiality.

Movant further contends pursuant to § 455(b)(1) that the undersigned has personal bias or personal knowledge because of the undersigned's "role and responsibility as supervisor of the jury selection process." (*Id.*, #146 at 17). While the Eastern District's jury plan indicates that the court has oversight of the court staff and process, the Clerk of Court is the one tasked with

managing the process of populating the wheel, selecting and retaining a contractor, and supervising those involved.  (*Id.*, #146-2 at 4).

The Eastern District Jury Plan explains the process as follows:

Section 3. Management and Supervision of Jury Selection Process

The clerk of the court shall manage the jury selection process.  The clerk shall act under the supervision and control of the judges of this district.

This district, by adoption of this plan, has elected to operate the jury selection process under a fully automated, electronic data processing system.

(*Id.*, #146-2 at 4).  The Jury Plan further provides that the source list for populating the jury wheel is the random selection from the Master Registration Lists maintained by the Secretary of the State of Texas of all persons registered to vote in the most recent federal general election held every two years.  Eastern District of Texas General Order 09-7.  The undersigned is not personally involved in this fully automated process of creating a jury wheel, has no role in selecting a contractor to perform this task, and had no knowledge of the identity of the contractor retained or the methodology utilized prior to the current filings.  The undersigned does not supervise the process and does not provide any instruction as to how the jury wheel will be created.  The Jury Plan is self-explanatory as to how the process is accomplished.  (*Id.*)

The Government is correct that the undersigned was not the Chief Judge of the Eastern District of Texas at the time of trial, and has never been the Chief Judge of the District, so the undersigned would not have received copies of the certificates prepared by Sutera Data Systems—the contractor actually responsible for creating and selecting names for the jury wheel at issue.  (*Id.*, #156 at 11).  Given the structure of the district's jury plan, the undersigned's role in jury selection does not raise an appearance of partiality.

24

Even if there were a flaw in the data received to populate the jury wheel from which the venire panel was drawn, Movant has failed to demonstrate that, under a reasonable person standard with knowledge of all the facts, the undersigned should recuse herself from this case, particularly in view of the untimeliness of the motion and the lack of any supporting evidence. Recusal is not justified under § 455(b) because a reasonable person, had he known of all the circumstances asserted, would not harbor doubts about the undersigned's impartiality.

Additionally, Movant fails to make a showing that the other judges in the Eastern District of Texas should be recused from this case, if the undersigned were unable to serve. He asserts, without facts or case law, that the entire judiciary of the Eastern District of Texas should be recused because of the judges' relationship with Maland, Splawn, and Harper. Movant presents no facts that reflect that any judge in the Eastern District of Texas has more than a professional relationship with these three court employees. His arguments are conclusory and speculative at best. He has failed to show that a reasonable person, with knowledge of all the facts, would find that all of the judges of the Eastern District of Texas are biased in upholding Movant's conviction and sentence. Movant's Motion to Recuse pursuant to § 455(b)(1) is denied.

E.    Recusal under § 455(b)(5)(iv)

Movant further contends that recusal is warranted under § 455(b)(5)(iv) because the undersigned is likely to be called as a material witness in this habeas proceeding. (*Id.*, #146 at 2). Movant again fails to explain how the underlying claims are not barred or foreclosed by §§ 1867(a) and (e) and his failure to meet the *prima facie* requirements of a Sixth Amendment challenge. Unless Movant can overcome the effect of his waiver of these claims, discovery is not at issue. Moreover, as the Fifth Circuit has pointed out, fishing expeditions are not permitted

25

under the guise of discovery in habeas corpus proceedings.[15]  *See United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014), *cert. denied*, 576 U.S. 1004 (2015).  In any event, the underlying claims are procedurally and legally barred. (No. 1:13-cv-724, #134 at 49-62).   Under these circumstances, recusal is not justified under § 455(b)(5)(iv) because a reasonable person, had he known of all the circumstances asserted, would not harbor doubts about the undersigned's impartiality.

Furthermore, Movant has not established any viable grounds to compel such testimony based on this record.  *See Reagan v. United States*, No. 3:14-CV-3420-M-BF, 2015 WL 13855221, at *1 (N.D. Tex. July 14, 2015) ("A judge may not be asked to testify about [her] mental processes in reaching a judicial opinion." (quoting *Robinson v. Comm'r of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995), *cert. denied*, 519 U.S. 824 (1996))); *see also United States v. Edwards*, 39 F. Supp. 2d 692, 705 (M.D. La. 1999) ("Neither counsel nor a party may seek recusal of a judge by announcing that they intend to call the judge as a witness." (citing *United States v. Diana*, 605 F.2d 1307 (4th Cir. 1979), *cert. denied*, 444 U.S. 1102 (1980); *United States v. Cross*, 516 F. Supp. 700 (M.D. Ga. 1981))).

In *Conkling v. Turner*, the Fifth Circuit affirmed a judge's denial of a motion to recuse where the plaintiff sought to call the judge as a witness.  138 F.3d 577, 592-93 (5th Cir. 1998).  Conkling alleged that the judge was relying on his own recollection of events which occurred during the trial.  *Id*. at 592.  He also requested that the Fifth Circuit order that the case be

---

[15] Rule 6 of the *Rules Governing 28 U.S.C. § 2255 Proceedings* does not "sanction fishing expeditions" based on a petitioner's conclusory allegations.  *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997), *cert. denied*, 522 U.S. 1120 (1998); *accord In re Robinson*, 917 F.3d 856, 865 n.14 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1128 (2020); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("[W]e have made clear that Rule 6 does not authorize fishing expeditions." (internal citation and quotation marks omitted)).

assigned to another district judge. *Id.* When rejecting Conkling's contentions, the Fifth Circuit

held:

> However, Conkling also requests that we direct that on remand the case be assigned
> to another district judge. We decline to do so. To begin with, we do not conclude
> that the district court erred in denying the motion to recuse. As a general rule, for
> purposes of recusal, a judge's "'[p]ersonal' knowledge of evidentiary facts means
> 'extrajudicial,'" so "[f]acts learned by a judge in his or her judicial capacity
> regarding the parties before the court, whether learned in the same or a related
> proceeding, cannot be the basis for disqualification." *Lac Du Flambeau Indians
> v. Stop Treaty Abuse–Wis.*, 991 F.2d 1249, 1255-56 (7th Cir. 1993).
>
> "Opinions formed by the judge that are based on . . . events occurring during the
> proceedings do not constitute a basis for recusal 'unless they display a deep-seated
> favoritism or antagonism that would make fair judgment impossible. Thus, judicial
> remarks during the course of a trial that are critical or disapproving of, or even
> hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or
> partiality challenge.'" *United States v. Landerman*, 109 F.3d 1053, 1066 (5th
> Cir.) (quoting *Liteky*, 510 U.S. at 555), *cert. denied*, 522 U.S. 1033 (1997).

*Id.* at 592-93. Here, there is no indication of any such "deep-seated favoritism or antagonism"

as would "make fair judgment impossible." *See id.* at 593.

Attempts to disqualify judges by indicating that the judge will be called as a witness are

not favored and are rarely granted. Such a simple method of disqualifying a judge should not be

encouraged or allowed. "Should a judge be vulnerable to subpoena as to the basis of every action

taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity,

and . . . interruption of its ordinary and proper functioning." *United States v. Anderson*, 560 F.3d

275, 282 (5th Cir. 2009) (quoting *Gary W. v. La. Dep't of Health & Hum. Res.*, 861 F.2d 1366,

1369 (5th Cir. 1988)); *United States v. Edwards*, 39 F. Supp. 2d 692, 705 (M.D. La. 1999)

(citing *United States v. Dowdy*, 440 F. Supp. 894, 896 (W.D. Va. 1977)).

In *Cross*, the defendant moved to dismiss the indictment on the ground that black citizens had been discriminated against in the selection of the grand jury foreman in violation of the Sixth Amendment.  516 F. Supp at 706-07.  Defendant also sought recusal of the district judges on the ground that the judges were necessary witnesses.  *Id.*  The court held:  "Even assuming judges are not immune from service of process, the cases seem to be in agreement that judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed."  *Id.* at 707.  Similarly, in *United States v. Morgan*, the Supreme Court compared a proceeding before the Secretary of Agriculture to one before a judge and stated that an examination of the mental processes of a judge would be "destructive of judicial responsibility" and, thus, should not be permitted.  313 U.S. 409, 422 (1941).

A "*reasonable* observer who is *informed of all the surrounding facts and circumstances*" would not find that the undersigned is biased or partial against Movant, given that:  (1) the case law strongly disfavors calling a sitting judge as a witness; (2) Movant has failed to show that the undersigned has any personal knowledge of how the jury wheel was populated by the fully automated, electronic data processing system; (3) Movant's JSSA claim is foreclosed and he has failed to state a *prima facie* violation of a Sixth Amendment fair cross-section of the community requirement—which are both legally and procedurally barred as discussed above.  *See Cheney*, 541 U.S. at 924.  Movant's "layering [of] several speculative premises on top of one another to reach a speculative conclusion" is not sufficient to warrant recusal.  *Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004).  Other than Movant's expressed desire to conduct discovery of the court and its employees, which appears questionable, Movant provides no basis for his assertion that the

undersigned would be called as a material witness in this case. No reasonable person would question the partiality of the undersigned based on Movant's claims in his recusal motion and the record before the court. *See Taylor v. United States*, No. 4:21-CV-103, 2022 WL 269108, at *2 (E.D. Tex. Jan. 27, 2022). Movant's Motion to Recuse pursuant to 28 U.S.C. § 455(b)(5)(iv) is denied.

      F.    <u>Recusal under the Due Process Clause</u>

Movant contends that "[r]ecusal is required under the Due Process Clause given the unacceptable risk of bias and the intractable appearance of bias in Judge Crone presiding over the present cause." (*Id.*, #146 at 21). Movant's argument is woefully short on facts and legal support. Movant does not reply (*Id.*, #161) to the Government's response (*Id.*, #156 at 19-20) that the federal statutes, *e.g.*, § 455, best protect a movant's interests regarding any due process concerns pertaining to the partiality of a judge. Movant fails again to set forth any facts demonstrating that the undersigned lacks impartiality or presents an appearance of partiality regarding the Movant's challenge to his conviction and sentence. Movant's conclusory allegations are not sufficient to provide a basis for recusal of the undersigned in this case under the Due Process Clause. Thus, Movant's arguments under the Due Process Clause are rejected.

V.    <u>Conclusion</u>

Having fully considered both parties' arguments and the applicable law, the court finds that a reasonable person, being fully advised of the facts, would not harbor doubts regarding the undersigned's impartiality pertaining to the challenge of Movant's conviction and sentence. Accordingly, it is

**ORDERED** that Movant Mark Isaac Snarr's Joint Motion and Memorandum in Support of Motion of Recusal (#146) is **DENIED**.

SIGNED at Beaumont, Texas, this 28th day of June, 2023.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE